Neil G. Sparber
Brian W. Tilker
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 318-3000
Facsimile:  (212) 318-3400
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
VICTOR HARARY,                                               :
                                                             :
                    Plaintiff,                               :
                                                             :     07 CV 7878 (JES)
        -against-                                            :
                                                             :
LOLLYTOGS LTD., RICHARD SUTTON                               :
and ALFRED SUTTON,                                           :
                                                             :
                    Defendants.                              :
                                                             :
------------------------------------------------------------ x

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COMPLAINT

This memorandum of law is submitted on behalf of defendants Lollytogs Ltd. ("Lollytogs"), Richard Sutton and Alfred Sutton (collectively "defendants") in support of their motion, pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, for an order (i) dismissing the second and third claims for relief in their entirety and (ii) dismissing the first claim for relief to the extent that it seeks damages in excess of the agreed upon damages set forth in the employment agreement between Lollytogs and plaintiff, on the ground that the claims fail to state a claim for which relief may be granted.

## PRELIMINARY STATEMENT

This is a claim for an alleged breach of an employment agreement between the plaintiff, Victor Harary ("Harary"), and his former employer, Lollytogs. Harary has apparently chosen to disclose to the Court only certain facts that he believes are helpful to his claim, while simultaneously failing to disclose, or misrepresenting, facts that would demonstrate that his claims are without merit. As set forth in the agreement between Lollytogs and Harary, dated September 28, 2004, a copy of which is annexed to the complaint as Exhibit B, Harary was a shareholder in Duty Free Manufacturers, Ltd. of Red Bank ("Duty Free") and was involved in a litigation with his co-shareholder, Steven Haber, concerning Harary's rights and obligations to Mr. Haber and Duty Free. Lollytogs was drawn into that litigation by virtue of Harary wanting to become employed by Lollytogs, and the action was eventually settled by Lollytogs paying Mr. Haber $750,000, pursuant to which Mr. Haber transferred his interest in Duty Free to Harary, and provided general releases to Harary and Lollytogs.

Thus, Lollytogs did not purchase Duty Free from Harary. In fact, Duty Free was dissolved by Harary in accordance with the agreement. (Exhibit B to the complaint.) Not coincidentally, the employment agreement between Harary and Lollytogs was also entered into on September 28, 2004, a copy of which is annexed to the complaint as Exhibit A (the "Employment Agreement"). In fact, Exhibit B to the complaint refers specifically to the Employment Agreement and references itself as a "Side Letter." Thus, there is no merit to Harary's contention that Lollytogs purchased Duty Free "for no consideration." After Lollytogs extricated Harary from the litigation with Mr. Harber, Harary became employed with Lollytogs pursuant to the Employment Agreement.

Harary began working for Lollytogs on or about September 28, 2004, after representing to Lollytogs that he was an expert in all facets of the manufacture and sale of industrial work-wear. Harary became the president of Lollytogs' new Official Work Wear industrial uniform division. During the nearly three years that Harary was employed by Lollytogs, the performance of the Official Work Wear division was a disaster, with Lollytogs having lost in excess of $5,000,000. After incurring such staggering losses, Lollytogs finally ceased operations of its Official Work Wear division on June 28, 2007 and, in accordance with Section VII of the Employment Agreement, the Employment Agreement was terminated as of the last day of the month in which operations ceased. Notice was provided to all employees of Lollytogs in the Official Work Wear division, including Harary. Curiously, Harary makes no mention in the complaint about the losses suffered by Lollytogs or that the Official Work Wear Division, of which he was president ceased operations on June 28, 2007, thereby triggering certain provisions of the Employment Agreement.

Notwithstanding the foregoing, as set forth below, even assuming for purposes of this motion the truth of all the allegations in the complaint, and the exhibits thereto, the second and third claims for relief should be dismissed in their entirety, and the first claim for relief should be dismissed to the extent it seeks damages in excess of the agreed-upon damages set forth in the Employment Agreement.

SUMMARY OF COMPLAINT[1]

Prior to becoming employed by Lollytogs, Victor Harary was allegedly engaged in the sourcing of garments from abroad and importation and sale of such garments in the United States

---

[1] A copy of the complaint is attached to the Affidavit of Neil G. Sparber, sworn to October 11, 2007 (the "Sparber Aff.") as Exhibit A.

and elsewhere. (Compl. ¶ 3.) Lollytogs was also allegedly engaged in the manufacture and production of garments and in the sale of such garments in the United States and elsewhere. (Id. ¶ 4.) In approximately 2003, Harary purportedly formed a company ("Duty Free") to engage in the sourcing of garments to be offered for sale and sold to companies who wished or required their employees to wear company uniforms. (Id. ¶ 7.) Harary allegedly formed a business plan for Duty Free and developed a sales force to solicit sales of uniform garments. (Compl. ¶ 8.) Harary purportedly traveled abroad to locate factories capable of producing garments and established a place of business. (Id.) In approximately the spring of 2004, Harary was allegedly placed in contact with Lollytogs as a source for funds to finance the production of uniforms for Duty Free. (Id. ¶ 9.) Harary was allegedly advised that Lollytog had extensive experience in the sourcing and production of garments and that Lollytogs was willing and able to provide the financing of Duty Free. (Id.) In approximately the summer of 2004, the defendants allegedly proposed to Harary that Lollytogs acquire Duty Free for no consideration and that Duty Free would become a new division of Lollytogs, which would be dedicated exclusively to the sourcing and sale of uniforms. (Id. ¶10.) Defendants proposed that Lollytogs would engage Harary as President and Chief Executive Officer of a division of Lollytogs for a term of five years for a stated minimum compensation and bonuses. (Id.) Defendants also allegedly proposed that they would agree to negotiate in good faith a five year renewal after the initial five year term. (Id.) Harary and Lollytogs entered into the Employment Agreement on September 28, 2004. (Sparber Aff., Ex. A to the complaint.)

The complaint alleges that from the date the Employment Agreement was executed, Richard Sutton and Alfred Sutton purportedly undermined Harary in the performance of his duties. (Compl. ¶ 12.) The complaint alleges that Richard Sutton and Alfred Sutton purportedly

caused garments ordered by Harary to be chemically treated with formaldehyde and ordered garments that contained other cloth and manufacturing defects which rendered the garments unsaleable and dangerous to the market. (Id. ¶ 12(a).) Richard Sutton and Alfred Sutton also allegedly insisted that they would provide no financing or authorize the production of other uniforms unless and until the products which had been treated with formaldehyde were sold. (Id.) Richard Sutton allegedly arranged for the sale of these garments for a total price of $200,000 and the Official Work Wear division was allegedly charged for the loss.[2] (Id.) Moreover, the complaint alleges that pending the sale of the garments described above, Richard Sutton and Alfred Sutton discouraged Harary's efforts to develop uniform orders and to pursue engagements with factories willing and able to produce uniforms for sale by Official Work Wear at favorable prices. (Id. ¶ 12(b).) Lastly, Richard Sutton and Alfred Sutton allegedly insisted that garments to be sold by Official Work Wear would be made from cloth manufactured by mills owned or controlled, in whole or in part, by Richard Sutton and Alfred Sutton. (Id. ¶ 12(c).) Richard Sutton and Alfred Sutton allegedly insisted that the cloth be manufactured into garments by factories owned or controlled by Richard Sutton and/or Alfred Sutton and their affiliates. (Id.) These garments were allegedly to be produced and manufactured for sale by Official Work Wear at prices significantly greater than merchandise available from independently owned and operated mills and factories. (Id.)

The complaint also alleges that Richard Sutton and Alfred Sutton allegedly directed Harary to have Official Work Wear refrain from competing in the sale of uniforms with other leading manufacturers of uniforms and to limit sales efforts to smaller uses of such garments. (Id. ¶ 12(d).) The effect of defendants' conduct allegedly demoralized the sales force, who were

---

[2] In reality, it was Joseph Sutton who arranged for the sale of the garments.

unsuitable and, for the most part, late for delivery dates. (Id. ¶ 12(e).) The defendants allegedly engaged in other unstated and unidentified conduct that was designed to undermine the efforts of Harary to develop Official Work Wear. (Id. ¶ 12(f).) Lastly, the complaint alleges that Lollytogs terminated the Employment Agreement on or about June 18, 2007 on unspecified pretextual grounds. (Id. ¶ 13.)

The first claim for relief alleges that Lollytogs purportedly breached the Employment Agreement because defendants' June 18, 2007 termination of Harary was allegedly "generated by a lack of good faith." (Id. ¶ 14.)

The second claim for relief alleges that the acts and conduct of Lollytogs constituted a violation of the "covenant of good faith" in the Employment Agreement, by which Lollytogs "implicitly agreed to refrain from committing any act which would impede or impair the discharge by plaintiff of his duties under the terms of his Employment Agreement." (Id. ¶ 16.)

The third claim for relief alleges that Richard Sutton and Alfred Sutton, as individuals, undermined Harary's ability to discharge his duties as called for by the Employment Agreement by insisting that garments to be produced for sale by Harary's division were to be produced by mills and factories owned in whole or in part by Richard Sutton and/or Alfred Sutton, and their associates. (Id. ¶ 18.) As a result, defendants Richard and Alfred Sutton allegedly induced Lollytogs to "pretextually terminate plaintiff's Employment Agreement." (Id. ¶ 19.)

ARGUMENT

POINT I

THE THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED SINCE RICHARD SUTTON AND ALFRED SUTTON ACTED ONLY IN THEIR OFFICIAL CAPACITIES FOR LOLLYTOGS

The third claim for relief should be dismissed because Richard Sutton and Alfred Sutton have no personal liability under New York law. Officers or directors of a corporation are not liable for corporate acts simply by reason of their official relation to the corporation, but are merely the corporation's agents. Faulk v. Milton, 25 A.D.2d 314, 316, 268 N.Y.S.2d 844, 847 (1st Dept. 1966), aff'd 20 N.Y.2d 894, 285 N.Y.S.2d 864 (1967) (dismissing complaint against director because a director of corporation is not liable for the debts or obligations of the corporation). Corporations are legal entities distinct from their directors and officers and have an independent legal existence. Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289 (S.D.N.Y. 2007) (citing Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 656, 357 N.E.2d 983, 489 N.Y.S.2d 327 (1976) (dismissing claim against officers and directors for personal liability).

Plaintiff has pleaded no facts to support an inference that Richard Sutton or Alfred Sutton acted in a capacity other than their official ones as agents of Lollytogs. The complaint merely alleges that Richard Sutton is the President and Chief Executive Officer of Lollytogs and that Alfred Sutton is "an officer and principal" of Lollytogs. (Compl. ¶¶ 5-6.) Similarly, the undisputed documentary evidence submitted with this motion demonstrates that the Employment Agreement, on which all of the claims for relief are predicated, does not purport to bind the individual defendants, but only Lollytogs. (Compl. Ex. A.) Moreover, the Employment Agreement does not contain any obligations of Richard Sutton or Alfred Sutton and was merely

executed by Richard Sutton on behalf of Lollytogs. (Sparber Aff., Ex. A.) Mere execution of an agreement on behalf of a corporation is insufficient to render an officer personally liable. See Steelmasters, Inc. v. Household Mfg. Co., 40 A.D.2d 963, 964, 338 N.Y.S.2d 451, 452 (1st Dept. 1972) (holding that where all documentary evidence indicated plaintiff dealt with the corporation, not the individual, action against individual defendant was properly dismissed and only the cause of action against corporate defendant would remain). Under these circumstances, an action can only lie against the Lollytogs. See id. Since the only allegations in the complaint with respect to Richard Sutton and Alfred Sutton arise out of their purported position with Lollytogs, the third claim for relief should be dismissed. See Faulk, 25 A.D.2d at 316, 268 N.Y.S.2d at 847.

Moreover, a director or officer of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken. Murtha v. Yonkers Child Care Ass'n, Inc., 45 N.Y.2d 913, 915, 383 N.E.2d 865, 411 N.Y.S.2d 219 (1978) (holding that individual defendants could not be held liable for interference with employment contract, in absence of evidence of any independently tortious conduct on part of any of individual defendants) (internal quotation marks omitted); see also Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp., 296 A.D.2d 103, 110744 N.Y.S.2d 384, 391 (1st Dep't 2002); Culverhouse v. Cooke Center for Learning and Development, Inc., 177 Misc.2d 365, 369, 675 N.Y.S.2d 776, 779-80 (Sup. Ct. N.Y. Co. 1998).

In Murtha, an employee brought an action against his employer and certain officers of the employer to recover for breach of an employment agreement, and conspiracy to interfere with

that agreement. 45 N.Y.2d at 913, 383 N.E.2d at 865, 411 N.Y.S.2d at 219. The Court held that the individual officer could not be held liable for interference with the employment agreement in the absence of any independently tortious conduct. Id. The same result should obtain herein. The complaint alleges that by reason of Richard Sutton and Alfred Sutton allegedly insisting that garments to be produced for sale by plaintiff's division were to be produced by mills and factories owned in whole or in part by defendants Richard Sutton and/or Alfred Sutton, and their associates (Compl. ¶ 18), Richard Sutton and Alfred Sutton purportedly "induced" Lollytogs "to pretextually terminate plaintiff's Employment Agreement." As in Murtha, an officer of a corporation cannot induce the corporation to breach its agreement. 45 N.Y.2d 913, 411 N.Y.S.2d 219. Moreover, the allegations, in the complaint that the individual defendants allegedly "induced" a wrongful termination of the Employment Agreement are conclusory and cannot support a claim against the individual defendants. See Manos v. Geissler, 377 F. Supp. 2d 422, 425-26 (S.D.N.Y. 2005) (granting motion to dismiss where plaintiff failed to plead facts sufficient to pierce the corporate veil). As a result, the third claim for relief should be dismissed. See Murtha, 45 N.Y.2d at 915, 383 N.E.2d 865, 411 N.Y.S.2d 219.

POINT II

THE SECOND CLAIM FOR RELIEF FOR THE BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH SHOULD BE DISMISSED

The second claim for relief for breach of the covenant of good faith should be dismissed because plaintiff's claim for breach of the covenant merely realleges the breach of contract claim, and the breaches asserted arise from obligations alleged to be contained within the body of the agreements. See Silvester v. Time Warner, Inc., 1 Misc.3d 250, 259, 763 N.Y.S.2d 912, 919 (Sup. Ct. N.Y. Co. 2003) (dismissing claims because the covenant of implied covenant of good faith and fair dealing does not impose obligations beyond what the explicit terms of the contract provide). Restating a cause of action for breach of contract under the guise of another claim does not enhance the pleading. See McMahon & Co. v. Bass, 250 A.D.2d 460, 462, 673 N.Y.S.2d 19, 21 (1st Dept. 1998); see also Cohen v. Nassau Educators Fed. Credit Union, No. 15094-05, 2006 WL 1540324, at *4 (Sup. Ct. Nassau Co. May 10, 2006) (dismissing cause of action for breach of implied covenant of good faith as duplicative of breach of contract action, and stating that New York does not recognize a separate claim for violation of the implied covenant of good faith and fair dealing); Sutton Assocs. V. Lexis-Nexis, 196 Misc.2d 30, 34, 761 N.Y.S.2d 800, 804 (Sup. Ct. Nassau Co. 2003) (dismissing breach of implied covenant of good faith claim as duplicative and stating that the duty of good faith cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract). The Court in McMahon, among other things, affirmed the dismissal of various claims, including a claim of breach of the duty of good faith, because they were duplicative of the main breach of contract claim asserted. 250 A.D.2d at 462, 673 N.Y.S.2d at 21.

The allegations in the complaint that establish the basis for the second claim for relief are identical to those that create the basis for the first claim for relief for breach of the Employment

Agreement. For example, the first claim for relief states that the breach of the Employment Agreement "was generated by a lack of good faith on the part of defendants." The second claim for relief states that the acts of defendants "constituted a violation by [Lollytogs] of the covenant of good faith implicit in this aforesaid Employment Agreement. Moreover, both claims seek the same amount of damages because they both allege the same claim for relief. (See Compl. ¶¶ 15, 17.) The second claim for relief, therefore, should be dismissed in its entirety.[2] See McMahon, 250 A.D.2d at 462, 673 N.Y.S.2d at 21.

Moreover, the allegations in the complaint that establish the basis for the second claim for relief are arise from obligations alleged to be contained within the body of the Employment Agreement. The second claim for relief alleges that the acts and conduct of Lollytogs constituted a violation of the "covenant of good faith" in the Employment Agreement, by which Lollytogs "implicitly agreed to refrain from committing any act which would impede or impair the discharge by plaintiff of his duties under the terms of his Employment Agreement." (Id. ¶ 16.) However, all of Harary's duties and obligations to Lollytogs are embodied in the Employment Agreement itself. (Sparber Aff., Ex. A.) The only breach alleged by Harary is of the Employment Agreement itself. (Id. ¶ 16.) Since the implied covenant of good faith does not impose obligations beyond the explicit terms of the contract, and plaintiff has failed to allege that Lollytogs sought to prevent performance by Harary under the Employment Agreement, the second claim for relief should be dismissed. See Silvester, 1 Misc.2d at 259, 763 N.Y.S.2d at 919; see also Poley v. Sony Music Entertainment, Inc., 163 Misc. 2d 127, 137, 619 N.Y.S.2d 923, 929 (Sup. Ct. N.Y. Co. 1994) (granting motion to dismiss cause of action for breach of the

---

[2] The second claim for relief should be dismissed in its entirety as set forth herein. However, the second claim for relief should also be dismissed to the extent that it seeks damages in excess of the liquidated damage provisions in the Employment Agreement for the reasons outlined in Point III.

covenant of good faith and fair dealing); National Union Fire Ins. Co. of Pittsburgh, 218 A.D.2d 296, 297, 722 N.Y.S.2d 495, 496 (1st Dep't 2001) (affirming dismissal of counterclaim for breach of good faith and fair dealing where defendant did not identify any conduct by plaintiff "that deprived [defendant] of the benefit of their bargain").

POINT III

THE FIRST CLAIM FOR RELIEF FOR BREACH OF THE
EMPLOYMENT AGREEMENT SHOULD BE DISMISSED TO THE EXTENT THAT IT
SEEKS DAMAGES IN EXCESS OF THE LIQUIDATED DAMAGES PROVISIONS
CONTAINED IN THE EMPLOYMENT AGREEMENT

A liquidated damages provision in an agreement is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement. Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 361 N.E.2d 1015 (1977) (finding that liquidated damages clause bore reasonable relationship to amount of probable or actual harm and, thus, liquidated damage clause was not a penalty because it was a reasonable estimate at the time the contract was negotiated and executed). The parties are free to provide for such an agreement as long as the provision is neither unconscionable nor contrary to public policy. Id. Such a provision will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. Id. at 425, 393 N.Y.S.2d 365, 361 N.E.2d 1015. A severance provision contained in an employment agreement is, in essence, a liquidated damages clause. See American Capital Access Service Corp. v. Muessel, 28 A.D.3d 395, 814 N.Y.S.2d 139 (1st Dep't 2006); Wanhope v. Press Co., 256 A.D. 433, 35, 10 N.Y.S.2d 797, 799 (3d Dep't 1939), aff'd, 281 N.Y. 607, 22 N.E.2d 171 (holding that parties by agreement limited their right to recovery to the severance pay mentioned in contract and parties agreed to accept severance pay as full liquidated damages for any discharge).

The Employment Agreement contains two provisions which expressly limit the damages that could be recovered by Harary. First, section 7.1 of the Employment Agreement states:

> Notwithstanding anything in this agreement to the contrary, in the event that Employer or its affiliates discontinue operating the [Official Work Wear] Division, then this agreement will terminate as of the last day of the month in which Employer ceases such operations. In such a case, severance compensation and bonuses will apply, and the non-complete [sic] applicable to the Division's business only shall not apply to Employee. This paragraph shall survive termination of this Agreement.

(Sparber Aff., Ex. A.) Thus, when Lollytogs ceased operations of the Official Work Wear division in June 2007, the Employment Agreement was terminated on June 30, 2007, the last day of the month in which the Official Work Wear division ceased operation and Harary allegedly became entitled to severance compensation.[3] The amount of severance allegedly owed to Harary is defined in section 5.1 of the Employment Agreement which unambiguously states that "[i]f for any reason (including termination for cause), this agreement is terminated or the employment of Employee is not renewed or extended after the initial five-year term, Employee shall receive a severance equal to the prior two (2) full year's Gross Profit Bonus, or the prior one (1) year's Base Pay, whichever is greater." (Id.) Thus, even if the agreement was terminated inappropriately, which it was not, Harary's damages are limited by Section 5.1 of the Employment Agreement to the greater of two years Gross Profit Bonus or one year of his base salary.

The facts in Wanhope are substantially similar to the facts herein. In Wanhope, various employees commenced an action to recover vacation pay allegedly due to them upon their dismissal from employment with the company. 256 A.D. at 434, 10 N.Y.S.2d at 798. Upon their dismissal, each of the employees received severance pay in accordance with the terms of

---

[3] While defendants reserve the right to contest plaintiff's right to severance if the present motion is not granted, it is assumed for purposes of this motion that plaintiff may be entitled to severance.

their employment agreement. <u>Id.</u> The Court found that both parties were bound by the employment agreement which contained provisions to the advantage of both of the contracting parties and held that the severance pay constituted the liquidated damage for the dismissal. <u>Id.</u> at 435. The contract gave the employer the right to discharge the employees at any time upon payment of the agreed severance pay and, thus, the employees were not entitled to additional payment beyond that which they agreed to accept upon dismissal. <u>Id.</u>

The same result as in <u>Wanhope</u> should obtain herein. The complaint alleges that Lollytogs wrongfully discharged Harary in violation of the Employment Agreement (Compl. ¶ 14.) and that as a result of the breach, Harary has been damaged in the sum of not less than $1,500,000.00. (Id. ¶ 15.) However, Harary and Lollytogs executed a valid contract in which the consideration for Lollytogs ceasing the operations of Harary's division, and thereby terminating the Employment Agreement, was that Harary would receive a fixed sum as severance. <u>See</u> <u>Wanhope</u>, 256 A.D. at 435, 10 N.Y.S.2d at 799. Harary and Lollytogs negotiated the liquidated damages provisions of the Employment Agreement which benefited both parties. Harary negotiated an agreement whereby he would receive severance compensation <u>even if he were terminated for cause</u>. Thus, he negotiated a provision that guaranteed him at least one year's salary even if he was discharged for theft or having breached the agreement, while simultaneously giving up the right to sue for additional damages. Lollytogs agreed to the liquidated damages provisions specifically to limit its damages while agreeing to pay severance to Harary even if he committed acts which constituted cause. Thus, Sections 5.1 and 7.1 are liquidated damages provisions in that they provide a reasonable estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement. <u>See</u> <u>Truck Rent-A-Center, Inc.</u>, 41 N.Y.2d at

424, 393 N.Y.S.2d 365, 361 N.E.2d 1015. As a result, the severance clauses are liquidated damage provisions mutually agreed to by the parties and, thus, limit Harary's recovery to the severance pay. See American Capital Access Service Corp., 28 A.D.3d at 396, 814 N.Y.S.2d 139; Wanhope v. Press Co., 256 A.D. at 435, 10 N.Y.S.2d at 799.

The first claim for relief, therefore, must be dismissed to the extent that it seeks damages in excess of the liquidated damage provisions in the Employment Agreement.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the second and third claims for relief in their entirety and the first claim for relief to the extent that it seeks damages in excess of the agreed upon damages set forth in the employment agreement between Lollytogs and plaintiff.

Dated: New York, New York
      October 11, 2007

                                    FULBRIGHT & JAWORSKI L.L.P.

                                    By: _____
                                    Neil G. Sparber
                                    Brian Tilker
                                    666 Fifth Avenue, 31st Floor
                                    New York, New York  10103-3198
                                    Attorneys for Defendants
                                    Telephone: (212) 318-3000
                                    Facsimile:  (212) 318-3400