```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
VICTOR HARARY,
                                        Civil Action No.
                                        07 CIV 7878
                        Plaintiff,      (PATTERSON, J.)

        -against-

LOLLY TOGS LTD., RICHARD SUTTON
and ALFRED SUTTON,

                        Defendants.
- - - - - - - - - - - - - - - - - -X
```

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

### Facts

The defendant Lolly Togs Ltd. (hereafter "Lolly Togs") is a corporation organized under the laws of the State of New York. Two of its numerous officers, Richard Sutton and Alfred Sutton are named as additional defendants.

Lolly Togs is engaged in the distribution of articles of clothing, including children's uniforms in particular.

1

Plaintiff, Victor Harary (hereafter "Harary") has had extensive experience over a period of many years in the sourcing primarily from factories abroad and sale in the United States of articles of clothing, which amounted to millions of dollars per annum (Harary affidavit, paragraph 3).

In approximately 2003, Harary developed a business plan calling for the manufacture abroad and sale in the United States of industrial uniforms pursuant to customer specifications. He expended time, treasure and effort in doing so; he engaged qualified individuals to develop and design fabrics, to identify a customer base, including industrial laundries, and otherwise developed a substantial amount of intellectual property (Harary affidavit, paragraphs 4 and 5).

As he proceeded, he realized that the potential for profit was enormous, but needed capital for the purchase of fabric and to defray initial manufacturing costs.

In early 2004, he was introduced to the principals of Lolly Togs, who expressed an interest in providing the financing (Harary affidavit paragraphs 7,8).

Before doing so, the principals of Lolly Togs insisted upon being made privy to Harary's intellectual property. Harary agreed to do so pursuant to an agreement on the part of Lolly Togs to treat the information, including customer lists, as confidential and Lolly Togs further agreed not to compete with

Harary (Harary affidavit paragraphs 9, 10; Exhibit A).

By September 2004, Lolly Togs approached Harary with a proposal that Lolly Togs would form a separate stand-alone division which would be operated by Harary with his own staff. Harary would receive a non-cancelable five year Employment Agreement with provisions for substantial fringe benefits, bonuses and a five year renewal option. Lolly Togs prepared such an agreement and the same was executed by Harary.

As part and parcel of the transaction, Harary transferred all of his intellectual property theretofore furnished to Lolly Togs in the previously described Confidentiality Agreement (Harary affidavit paragraphs 13-17).

Upon the execution of the agreement, a separate division was indeed formed, but Harary's efforts to operate the same as a stand-alone company were frustrated. Harary's division was required to purchase fabric and manufactured goods through Lolly Togs central buying office. The prices were "negotiated" by the central buying office with factories located in Asia owned in whole or in part by the Sutton defendants, resulting in higher costs paid by Harary's division for product, resulting in Harary's division being unable to effectively compete; Harary had little or no say in the selection of fabric or the identities of factories selected for production, which the Complaint alleges were owned in whole or in part by the Sutton defendants and their

affiliates.    Prices for product was to be paid by Harary's division and were substantially higher than was otherwise available; promised delivery dates of products were routinely ignored.    (Harary affidavit, paragraphs 17-21.)

Furthermore, Harary was instructed by Richard Sutton, Chief Executive Officer of Lolly Togs, that his division should not attempt to compete with the leading producer and distributor of industrial uniforms in the United States, Red Kap, because Sutton or Lolly Togs or both were interested in acquiring companies or divisions from Vanity Fair, the owner of Red Kap.    (Harary affidavit, paragraph 22.)

As a consequence, Harary's division was prevented from normal growth and development of business.[1]

On or about June 15, 2007, Harary was instructed that he was fired forthwith.   He was not even allowed to removed his personal belongings.  The reasons advanced for his discharge was Lolly Togs had decided to terminate the operation of his division.   (Harary affidavit paragraph 25).

At the same time, there was proffered to him a proposed Separation Agreement by which he would be prohibited from competing with Lolly togs for a period of years (Harary affidavit paragraph 26; Exhibit D).

---

[1] The foregoing notwithstanding, in early 2007, Lolly Togs was offering to sell Harary's division for $5,000,000.00.

4

Harary's affidavit and particularly the exhibits attached show beyond doubt that Harary's division, Official Work Wear, is in full operation; the claim that Harary's division was being discontinued was untrue (Harary affidavit, paragraphs 30-35 and exhibits therein referred to).

Harary has received no money whatever since the date of his discharge.

Defendants' motion as to Count I of the Complaint is predicated on the notion that the demand for damages exceeds that contemplated by the Employment Agreement. Defendants' motion does not seem to challenge plaintiff's claim that Lolly Togs breached the Employment Agreement by discharging him.

To the Contrary, Lolly Togs could not make a good faith argument that it had discharged Harary in accordance with the terms of the Employment Agreement because the Employment Agreement (drafted by Lolly Togs) admits of no occasions for cancellation except termination of Harary's division.[2]

Since it can hardly be disputed that Lolly Togs breached the agreement, the question remains as to the damages suffered by Harary in consequence.

---

[2] Concurrently with Harary's firing, Lolly Togs circulated a notice to the Division's sales people throughout the United States to the effect that Harary's division was being terminated. This, however, is patently untrue as is demonstrated by the exhibits attached to the Harary affidavit, and as shown in the affidavit of Jeffrey Smith, one of the sale representatives to whom that notice was sent.

5

It is simplistic in the extreme to suggest that those damages are limited by the total minimum amount unpaid to Harary through the initial five year term.

First of all, the contract provides for generous bonuses to be paid to Harary upon the achievement of certain goals, but Lolly Togs made it impossible for those goals to be achieved.

Secondly, the agreement obligated Lolly Togs to negotiate in good faith for a five year extension to the agreement; Harary's compensation would be no less than the minimum of approximately $900,000.00 in the second five year period.

Thirdly, the conduct of the defendants is such as to be suggestive of at least a constructive fraud on the part of the defendants to obtain Harary's intellectual property without paying anything for it beyond mere salary.

Count 2 of the Complaint alleges that the defendants were guilty of violating the covenant of good faith implicit in the employment agreement which arose as a result of the refusal on the part of the defendants to permit Harary to operate his division as a stand-alone division and preventing normal competition.

Defendants' argument in support of dismissal of Count 2 is predicated on the notion that a claim for damages for a breach of covenant of good faith implicit in every contract, is subsumed by

a viable claim of breach of the contract itself.  This argument was rejected as recently as August 20, 2007 in <u>Gross vs. Empire Healthchoice Assurance Inc.</u>, (Sup. Ct., New York County), NYLJ 8/20/2007, page 18, column 3.  The <u>Gross</u> Court concluded that a claim for breach of implied covenant for good faith may stand apart from a claim of breach of the underlying agreement out of which the requirement for good faith conduct arises, citing <u>Chase Manhattan Bank N.A. vs. Keystone Distributors</u>, 873 F.Supp. 808 (S.D.N.Y. 2004); <u>Dalton vs. Education Testing Service</u>, 87 N.Y.2d 384, 639 N.Y.S.2d 977 (1995); <u>Outback/Empire I Ltd. Partnership vs. Kamitsis</u>, 35 A.D.3d 563, 825 N.Y.S.2d 747 (A.D.2, 2006); <u>Rich Bill vs. Jupiter Partners</u>, 309 A.D.2d 288, 765 N.Y.S.2d 575 (A.D.1, 2003).

A claim for damages by reason of a breach of covenant of good faith may give rise in an appropriate case, such as this one for an award of punitive damages.

As to the motion to dismiss Count 3, which deals with the defendants Richard and Alfred Sutton, the argument in support of dismissal is not well founded even under the authorities cited by defendants' Memorandum of Law.

It is, of course, Hornbook Law that officers of a corporation cannot be held liable for acts performed in the course of their official duties.  At page 8 of defendants' Memorandum of Law, it is stated that the individual defendants,

officers of Lolly Togs, "could not be held liable for interference with employment contract, in absence of evidence of any independently tortious conduct on part of any individual defendants."

The argument is of course accurate so far as it goes, but the corollary is equally true: corporate officers can be held liable for conduct which is independently tortious, whether or not committed in the course of their official duties. <u>Bank of New York vs. Beresford International</u>, 190 A.D.2d 622, 594 N.Y.S.2d 152 (A.D.1, 1993); <u>Capital Records Inc. vs. Wings Digital Corp.</u>, 218 F.Supp.2d 280 (E.D.N.Y., 2002); <u>Frazier vs. Turning Stone Casino</u>, 254 F.Supp.2d 295, 307 (N.D.N.Y., 2002); <u>Puyall-Up Tribe vs. Department of Game of Washington</u>, 433 U.S. 165, 97 S.Ct. 266, 53 L.Ed.2d 667 (1977).

It is elementary that a corporate officer who acts tortiously, either to advance the objectives of the corporation he serves or his own objectives is independently liable for his conduct. A fortiori, he is liable for independently tortious conduct, by which he lines his own pockets in derogation of the duties owed to his corporate principal. See, e.g., <u>Maddaloni Jewelers Inc. vs. Rolex Watch USA</u>, 2007 W.L. 1774986 (A.D.1, 2007).

In the instant case, the Complaint alleges that the Sutton defendants were lining their own pockets by insisting that Harary's division purchase for resale garments manufactured by Sutton's overseas factories at inflated prices.

## CONCLUSION

The motion to dismiss should be denied.

DATED:   **New York, New York**
         **November 1, 2007**

Respectfully submitted,

NOEL W. HAUSER AND ASSOCIATES
Attorneys for Plaintiff
Office and P. O. Address
270 Madison Avenue - 13th Fl.
New York, New York 10016
212   688-6400

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

WARREN WILLIAMS, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age, and reside at New York City, New York.

On November 2, 2007, I served the annexed PLAINTIFF'S MEMORANDUM OF LAW by personally delivering a true copy thereof to the offices of the following addressee at the address designated by it as its offices, as follows:

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038

_____
Warren Williams   12024

Sworn to before me this
2nd day of November, 2007

_____
Notary Public

Estelle Ginsberg
Notary Public, State of New York
No. 01GI4728346
Qualified in Queens County
Commission Exp. Nov. 30, 2010