UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR HARARY,

                    Plaintiff,

    -against-

LOLLY TOGS LTD., RICHARD SUTTON
and ALFRED SUTTON,

                    Defendants.

No. 07 CV 07878 (RPP) (KNF)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

JACKSON LEWIS LLP
59 Maiden Lane, 39th Floor
New York, New York 10038
(212) 545-4000
Felice B. Ekelman (FE 5692)
John A. Snyder II (JS 4786)

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii-iii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ..........................................................................................................................1

POINT I ...................................................................................................................................1
PLAINTIFF'S CLAIM FOR DAMAGES IN EXCESS OF THE EMPLOYMENT
AGREEMENT'S LIQUIDATED DAMAGES CLAUSES SHOULD BE DISMISSED. ................1

POINT II ..................................................................................................................................4
PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH
SHOULD BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT
CLAIM. .....................................................................................................................................4

POINT III .................................................................................................................................7
PLAINTIFF'S CLAIMS FOR RELIEF AS AGAINST RICHARD SUTTON AND ALFRED
SUTTON SHOULD BE DISMISSED BECAUSE AT ALL RELEVANT TIMES THEY
ACTED IN THEIR OFFICIAL CAPACITIES FOR LOLLYTOGS. ...........................................7

CONCLUSION ........................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

Alter v. Bogoricin,
97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997)........................4, 6

Bell v. Stephens,
No. 05 Civ. 7182 (LTS)(RLE), 2007 U.S. Dist. LEXIS 18600 (S.D.N.Y. Mar. 13, 2007).........7, 8

Brecher v. Laikin,
430 F. Supp. 103 (S.D.N.Y. 1977) ...............................................................................................1

Chase Manhattan Bank, N.A. v. Keystone Distributings,
873 F. Supp. 808 (S.D.N.Y. 1994) ...............................................................................................5

Raul v. AMEX,
95 Civ. 3154 (SAS), 95 Civ. 8361 (SAS), 1996 U.S. Dist. LEXIS 5914 (S.D.N.Y. May 1,
1996) .............................................................................................................................................4

Solow v. Stone,
994 F. Supp. 173 (S.D.N.Y. 1988) ...............................................................................................7

United Air Lines, Inc. v. Austin Travel Corp.,
867 F.2d 737 (2d Cir. 1989)..........................................................................................................1

### STATE CASES

Apfel v. Prudential-Bache Sec., Inc.,
183 A.D.2d 439, 583 N.Y.S.2d 386 (N.Y. App. Div. 1st Dep't 1992) ............................................4

Gross v. Empire Healthchoice Assur., Inc.,
16 Misc. 3d 1112A, 2007 N.Y. Misc. LEXIS 4962 (Sup. Ct. N.Y. County 2007) ........................5

JMD Holding Corp. v. Cong. Fin. Corp.,
4 N.Y.3d 373, 795 N.Y.S.2d 502 (2005) ......................................................................................1

Kosson v. Aglaze,
203 A.D.2d 112, 610 N.Y.S.2d 227 (N.Y. App. Div. 1st Dep't 1994) ............................................7

McMahan & Co. v. Bass,
250 A.D.2d 460, 673 N.Y.S.2d 19 (N.Y. App. Div. 1st Dep't 1998) .........................................4, 5

Mencher v. Weiss,
306 N.Y. 1 (1963) ........................................................................................................................7

Murtha v. Yonkers Child Care Association,
45 N.Y.2d 913, 411 N.Y.S.2d 219 (1978) ....................................................................7

Silvester v. Time Warner, Inc.,
1 Misc. 3d 250, 763 N.Y.S.2d 912 (Sup. Ct. N.Y. County 2003) ...................................4

Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.,
41 N.Y.2d 420, 393 N.Y.S.2d 365 (1977) ....................................................................1

Wanhope v. Press Co.,
256 A.D. 433, 10 N.Y.S.2d 797 (N.Y. App. Div. 3d Dep't 1939)....................................2

## PRELIMINARY STATEMENT

Defendants Lollytogs, Ltd. ("Lollytogs"), Richard Sutton and Alfred Sutton (collectively referred to herein as "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss Plaintiff Victor Harary's ("Plaintiff" or "Mr. Harary") Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)[1].

## ARGUMENT

## POINT I

## PLAINTIFF'S CLAIM FOR DAMAGES IN EXCESS OF THE EMPLOYMENT AGREEMENT'S LIQUIDATED DAMAGES CLAUSES SHOULD BE DISMISSED.

New York courts have long held that "[t]he parties to a contract have the right to agree to [liquidated damages] clauses, provided that the clause is neither unconscionable nor contrary to public policy." Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 368-69 (1977). "The appropriate analysis is not whether a better quantification of damages could have been drafted by the contracting parties, but whether the amount of liquidated damages actually inserted in the contract is reasonable." United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 740 (2d Cir. 1989). If negotiated "at arms length and without misinformation" a liquidated damages clause must be enforced. Id. at 741. When a liquidated damages clause is upheld, the measure of relief for a breach of contract is the negotiated amount set forth in the liquidated damages clause. JMD Holding Corp. v. Cong. Fin. Corp., 4 N.Y.3d 373, 380, 795 N.Y.S.2d 502, 506-07 (2005) (quoting Brecher v. Laikin, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)).

---

[1] A summary of the factual background of the matter is set forth in the Reply Affidavit of Joseph Sutton in Support of Defendants' Motion to Dismiss, submitted herewith (hereinafter "Sutton Aff., ¶__").

The stipulated relief available to Plaintiff associated with discontinuance of the Official Work Wear Division ("OWW Division") is expressly provided for in the contract. There is no basis for awarding additional payment to Plaintiff beyond that he agreed to in the liquidated damages/severance provision of the agreement. See, e.g., Wanhope v. Press Co., 256 A.D. 433, 435, 10 N.Y.S.2d 797, 799 (N.Y. App. Div. 3d Dep't 1939) (limiting severance pay to discharged employees to stipulated amount). The parties expressly contemplated and provided by contract for possible discontinuance of the division. Mr. Harary, with the representation of counsel, agreed to Section 7.1 of the September 2004 Employment Agreement entitled "Discontinuance of Business or Division as Termination of Employment." (Sutton Aff., Exhibit "A"). After Lollytogs discontinued the OWW Division it honored its full contractual obligations to Mr. Harary by offering him the severance pay of one year's salary of $185,000, payable weekly, in accordance with Section 7.1 of the agreement for discontinuance of the division[2]. This is higher than two years of bonus payments, as alternatively provided for under that section. (Sutton Aff., ¶ 34).

Plaintiff has not, and cannot, allege that the liquidated damages provisions were not negotiated at arms length and/or with misinformation. Plaintiff conjectures about different measures of monies that he theoretically could have recovered under the agreement had the division not been discontinued, which was not the case. (Sutton Aff. ¶ 32). However, Plaintiff's speculation is a moot point as he completely disregards that the contract expressly envisioned and provided for the discontinuation of the OWW Division and what Plaintiff would recover if the OWW Division was discontinued and/or if the agreement was terminated.

---

[2] Despite Plaintiff's representations to the contrary, and as set forth in greater detail in the Reply Affidavit of Joseph Sutton, the OWW Division was discontinued effective June 15, 2007. Further, the OWW Division website is now inoperable except for a single page to advise visitors to contact Lollytogs to purchase existing inventory Lollytogs is trying to liquidate. The company has not issued a single purchase order since June 15, 2007 to manufacture any industrial uniforms or other products formerly offered by the OWW Division. (Sutton Aff. ¶¶ 32, 38-40).

Plaintiff cites neither law nor facts sufficient to undermine the enforceability of the liquidated damages provisions (Sections 7.1 and 5.1 of the September 2004 Employment Agreement), or that the provisions provide a reasonable estimate of potential damages in the event of a discontinuance of the OWW Division.  To the contrary, Plaintiff merely states that "[s]ince it can hardly be disputed that Lollytogs breached the agreement, the question remains as to the damages suffered by Harary in consequence." (Opposition Memorandum of Law at p. 5). Plaintiff ignores that this "question" is precluded, if not answered, by the express and unambiguous language in the agreement[3].

In or about June 2007, after significant, mounting losses for nearly three years with relatively few sales of uniforms made by Plaintiff or the OWW Division, Lollytogs made the business decision that it could no longer continue to generate staggering losses which at that point totaled millions of dollars.  (Sutton Aff., ¶ 31).  In his affidavit, Plaintiff acknowledges that Lollytogs was willing to pay him the contracted severance post-termination.  In sum, the parties predicted that discontinuance of the OWW Division was a possible outcome and contractually provided for it.  This was part of a broader September 2004 Employment Agreement, where many terms including the narrow for cause provision and the payment of severance to Plaintiff even if Mr. Harary were terminated *for cause* or the Division needed to be discontinued were acceded to by Lollytogs.  Mr. Harary cannot now be heard after negotiating this agreement with counsel (the same one representing him in this lawsuit) to selectively seek the benefit and enforcement of the provisions of the September 2004 Employment Agreement that he likes while disregarding others that he wishes to ignore.

---

[3] Again, Plaintiff's alleged "breach" is not a breach at all, but rather the discontinuance of the OWW Division, a contingency expressly provided for in the September 2004 Employment Agreement.  As stated in the Sutton Aff., Mr. Harary has come nowhere close to alleging any specific breaches of the September 2004 Employment Agreement.  (Sutton Aff. ¶¶ 27-30).  The suggestion that Lollytogs would breach the agreement by losing million upon millions of dollars for the privilege of paying Mr. Harary $185,000 in severance is ludicrous.

Accordingly, Count I of Plaintiff's Complaint must be dismissed to the extent it seeks damages in excess of the liquidated damages provisions in the Employment Agreement.

## POINT II

### PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH SHOULD BE DISMISSED AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM.

A cause of action alleging a breach of the covenant of good faith is duplicative of a cause of action alleging breach of contract and does not state an independent cause of action. Silvester v. Time Warner, Inc., 1 Misc. 3d 250, 258, 763 N.Y.S.2d 912, 918 (Sup. Ct. N.Y. County 2003) (granting motion to dismiss breach of covenant of good faith and fair dealing claim as duplicative); Apfel v. Prudential-Bache Sec., Inc., 183 A.D.2d 439, 439, 583 N.Y.S.2d 386, 387 (N.Y. App. Div. 1st Dep't 1992) (same). "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Raul v. AMEX, 95 Civ. 3154 (SAS), 95 Civ. 8361 (SAS), 1996 U.S. Dist. LEXIS 5914, at *7, fn 2 (S.D.N.Y. May 1, 1996) (dismissing claim for breach of implied duty of good faith and fair dealing because it was redundant of plaintiff's breach of contract claim); Alter v. Bogoricin, 97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369, at *19 (S.D.N.Y. Nov. 4, 1997) (same). "A breach of the duty of good faith is duplicative of the cause of action for breach of contract since, where appropriate, the courts will imply the obligation of good faith and fair dealing between parties to a contract." McMahan & Co. v. Bass, 250 A.D.2d 460, 462, 673 N.Y.S.2d 19, 21 (N.Y. App. Div. 1st Dep't 1998).

As stated in Defendants' moving brief, the allegations in Plaintiff's Complaint that establish the basis for the covenant of good faith claim for relief (Count II) arise from the obligations alleged to be contained within the body of the employment agreement itself -- and

thus are fully encompassed by Plaintiff's breach of contract claim. Plaintiff's opposition cites a line of cases that are purportedly to the contrary and that Plaintiff blithely alleges allow him to separately assert both causes of action. However, the cases cited by Plaintiff are readily distinguishable.

For instance, Plaintiff cites Gross v. Empire Healthchoice Assur., Inc., 16 Misc. 3d 1112A, 2007 N.Y. Misc. LEXIS 4962 (Sup. Ct. N.Y. County 2007), for the proposition that a claim for breach of implied covenant of good faith may stand apart from a claim of breach of the underlying agreement. (Opposition Memorandum of Law at p. 7). Similarly, Plaintiff cites to Chase Manhattan Bank, N.A. v. Keystone Distribs., 873 F. Supp. 808, 815 (S.D.N.Y. 1994), where the Court held that "[a] party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations." In Gross, the court sustained a cause of action for breach of an implied covenant of good faith even though there was no valid breach of contract claim. Likewise, in Chase Manhattan Bank, N.A., a claim for breach of the duty of good faith was sustained even though the breach of contract claim was dismissed. However, these cases are insufficient for Plaintiff's covenant of good faith claim to survive dismissal as they do not provide any support for what is seemingly Plaintiff's position -- that a party can separately allege claims for <u>both</u> breach of contract and breach of the covenant of good faith. The cases should not be read as holding that a plaintiff can plead both claims when the underlying conduct and relief sought are identical, but rather that a plaintiff can bring a breach of duty of good faith claim even without a viable breach of contract claim[4]. As the First Department held in McMahan, *supra*, when appropriate the court will imply the covenant of good faith claim because it is already subsumed by the breach of contract claim. As the

---

[4] Defendants also note that the holding in Gross has not been followed by any other state or federal court decision of which we are aware.

obligations imposed by the covenant are not distinct from those imposed by the contract, the claims cannot be separately plead, and when a plaintiff attempts to do so the covenant of good faith claim is subject to dismissal as duplicative.  See, e.g., Alter, supra.

Plaintiff's Complaint states in the breach of contract claim (Count I) that "[t]he termination of plaintiff's employment was in violation of the terms of the Employment Agreement ... and was generated by a lack of good faith on the part of the defendants." (Complaint at ¶ 14).  Moreover, it is alleged that "[a]s a result of the violation by [Lollytogs] of the Employment Agreement … Plaintiff has been damaged in the sum of not less than $1.5 million." (Complaint at ¶ 15).  Similarly, Plaintiff states in the breach of covenant of good faith claim (Count II) that "[t]he acts and conduct of [Lollytogs] … constituted a violation by [Lollytogs] of the covenant of good faith implicit in the aforesaid Employment Agreement…" and "[a]s a result of the violation by [Lollytogs] of the Employment Agreement … Plaintiff has been damaged in the sum of not less than $1.5 million."  (Complaint at ¶ 17).  The plain language of the Complaint indicates that Plaintiff bases the allegations in Counts I and II of the Complaint on the same underlying conduct and seeks identical relief in each Count.

Because Plaintiff's covenant of good faith claim is duplicative of the breach of contract claim, it should be dismissed in its entirety with prejudice.

## POINT III

### PLAINTIFF'S CLAIMS FOR RELIEF AS AGAINST RICHARD SUTTON AND ALFRED SUTTON SHOULD BE DISMISSED BECAUSE AT ALL RELEVANT TIMES THEY ACTED IN THEIR OFFICIAL CAPACITIES FOR LOLLYTOGS.

New York courts have uniformly held that "a corporation's officer or director generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract" because an agent cannot be held liable for inducing his principal to breach a contract provided the agent was acting within the scope of his or her authority. See, e.g., Solow v. Stone, 994 F. Supp. 173, 181 (S.D.N.Y. 1988) (citing Murtha v. Yonkers Child Care Ass'n, 45 N.Y.2d 913, 915, 411 N.Y.S.2d 219, 220 (1978), and holding that administrators of corporation were not liable for tortious interference); see also Kosson v. Aglaze, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228-29 (1st Dep't 1994) (holding that tortious interference claim against a hospital and its agents was properly dismissed because even if there had been an employment contract there was no showing that the agents acted outside the scope of their authority).

"An agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Bell v. Stephens, No. 05 Civ. 7182 (LTS)(RLE), 2007 U.S. Dist. LEXIS 18600, at *15 (S.D.N.Y. Mar. 13, 2007) (quoting Mencher v. Weiss, 306 N.Y. 1, 4 (1963)). Even if an officer or director makes decisions or takes steps on behalf of a corporation that result in the entity breaching a contract, there is no personal liability for inducing the breach if the individual was acting in an official capacity during such time. See, e.g., Murtha, supra.

In Count III of the Complaint Plaintiff alleges that Richard Sutton and Alfred Sutton (collectively the "Individual Defendants") "insisted that garments to be produced for sale

7

by Plaintiff's division were to be produced by mills and factories owned in whole or in part by Defendants Richard Sutton and/or Alfred Sutton … ." (Complaint at ¶ 18). In that regard, Plaintiff alleges that the Individual Defendants "induced [Lollytogs] to pretextually terminate Plaintiff's Employment Agreement." (Complaint at ¶ 19). Plaintiff acknowledges that Richard Sutton was President and Chief Executive Officer of Lollytogs and Alfred Sutton was an officer and principal of Lollytogs. (Complaint at ¶¶ 5-6). The agreement was entered into between Lollytogs and Plaintiff. (Sutton Aff., Exhibit "A"). Neither Richard Sutton nor Alfred Sutton was a party to such agreement. Rather, Richard Sutton signed the agreement in his official capacity on behalf of the Employer, Lollytogs. (Sutton Aff., Exhibit "A," p. 6). The mere signature of a contract by an individual on behalf of a corporation does not create individual liability for the signatory. Bell, *supra*, at *15-16.

Plaintiff cites several cases which stand for the proposition that a corporate officer can be held liable for conduct which is independently tortious if the conduct was not in good faith and/or committed for personal pecuniary gain. (Opposition Memorandum of Law at p. 8). However, Plaintiff seemingly grounds his claim against the Individual Defendants on the fact that the Individual Defendants' actions "undermined the Plaintiff in the performance of his duties." (Complaint at ¶ 12). For instance, Plaintiff alleges that the Individual Defendants acted as they did in order to preclude Plaintiff from competing with mills and factories owned or controlled by them. (Complaint at ¶ 12(c)).

Yet, the agreement which Plaintiff purports to allege a breach of does not provide for where goods would be manufactured and/or produced and, significantly, does not provide for *who* was to make such decisions. (Sutton Aff., Exhibit "A"). Critically, there is nothing in the Agreement with Mr. Harary that provides him with any contractual rights to be the sole, or even

8

primary, decision-maker to determine where products are manufactured or requiring the OWW Division to be treated any different than every other division of Lollytogs, which may make use of Lollytogs' central buying office and the factories with which Lollytogs has worked in the past. (Sutton Aff. ¶ 28).

The suggestion that Lollytogs would steer production jobs to factories that would overcharge the OWW Division is nonsensical. Lollytogs invested a great deal of time and money into the division and had a great economic interest in its profitability and success and no reason to see it fail. (Sutton Aff. ¶ 29). It is counter-intuitive to suggest that the Individual Defendants who together built up this closely-held company over a period of 50 years would lose millions upon millions of dollars simply to invoke the liquidated damages/severance provision in the September 2004 Employment Agreement to pay Mr. Harary $185,000, after the OWW Division was discontinued and the division had been saddled with millions of dollars of unsold inventory. Further, Plaintiff's argument misses the point that Plaintiff, the Individual Defendants and Lollytogs' economic interests were all aligned. Mr. Haray was hired to produce sales. (Sutton Aff., Exhibit A, §1.2) If any mills or factories used by Lollytogs (whether suggested by the Individual Defendants or anyone else) were non-competitive, no orders would be taken or goods made and no one would profit -- not Lollytogs, the Individual Defendants or Mr. Harary. Finally, Lollytogs does not own any mills overseas and the suggestion that it does in Plaintiff's opposition papers is wrong. (Sutton Aff. ¶ 28).

Similarly, Mr. Harary was never advised by Lollytogs not to compete with Red Kap, the largest uniform supplier in the United States. Rather, Plaintiff was asked not to disparage Red Kap in making his sales. It is inconceivable for the OWW Division to do business and not compete with the largest uniform supplier and market share leader. (Sutton Aff. ¶ 30).

Plaintiff makes vague assertions that the Individual Defendants "undermined Plaintiff's ability to discharge his duties ... ." (Complaint at ¶ 18). However, Plaintiff does not point to any specific deals or transactions that were allegedly lost because of the Individual Defendants' actions. Therefore, even if the conduct of the Individual Defendants as alleged were true (which Defendants vehemently deny), Plaintiff cannot demonstrate any damages allegedly attributable to the Individual Defendants' conduct and has failed to state a *prima facie* case of tortious interference.

For all of the foregoing reasons, Count III of Plaintiff's Complaint necessarily fails and should be dismissed in its entirety, with prejudice.

## CONCLUSION

Based on the foregoing and the reasons set forth in Defendants' moving papers, Defendants respectfully request the Court enter an Order: (1) dismissing Count I of the Complaint to the extent it seeks relief in excess of the liquidated damages provisions of the Employment Agreement; (2) dismissing with prejudice Count II and Count III of the Complaint in their entirety; (3) awarding Defendants the costs they have incurred in filing and pursuing the instant motion to dismiss; and (4) awarding Defendants such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS LLP
59 Maiden Lane, 39th Floor
New York, New York 10038
(212) 545-4000

Dated: November 12, 2007          By: _____
New York, New York                     Felice B. Ekelman (FE 5692)
                                       John A. Snyder II (JS 4786)

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **November 12, 2007** the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

> *s/* **John A. Snyder II** _____
> **John A. Snyder II (JS 4786) – <u>snyderj@jacksonlewis.com</u>**
>
> Counsel for Defendants Lollytogs, Ltd., Richard Sutton and Alfred Sutton