```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VICTOR HARARY,
        Plaintiff,

                 07 CV. 7878 (RPP)

- against -

                 **OPINION & ORDER**

LOLLYTOGS LTD., RICHARD SUTTON,
and ALFRED SUTTON,

        Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

   On October 11, 2007, Defendants Lollytogs Ltd. ("Lollytogs"), Richard Sutton, and Alfred Sutton filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). The Complaint, which was filed on September 7, 2007, contains three claims: 1) that the termination of Victor Harary ("Plaintiff") by Lollytogs breached the September 28, 2004 Employment Agreement between Plaintiff and Defendant Lollytogs; 2) that the acts and conduct of Lollytogs violated the covenant of good faith implicit in the Employment Agreement; and 3) that Defendants Richard Sutton and Alfred Sutton, by insisting that garments be produced by mills and factories owned in whole or in part by Defendants Richard Sutton and Alfred Sutton, undermined Plaintiff's ability to perform his duties properly, and caused Lollytogs to terminate the Employment Agreement on pretextual grounds.

   Defendants' motion seeks to dismiss: 1) Plaintiff's claim in Count One for damages in excess of the liquidated damages clause contained in the Employment Agreement; 2) Plaintiff's claim in Count Two for breach of the covenant of good faith as duplicative of the breach of Employment Agreement claim in Count One; and 3)

Plaintiff's claim in Count Three for relief against the Sutton Defendants because, at the time of the events alleged in the Complaint, the Sutton Defendants were acting in their official capacities for Lollytogs. Oral argument on this motion was held on December 18, 2007. For the reasons set forth below, Defendants' motion as to Count Two and Count Three is granted, and Defendants' motion as to Count One is denied.

**THE COMPLAINT**

The Complaint states that Plaintiff had been engaged for many years either as a principal or an employee of businesses that were "engaged in the sourcing of garments from abroad, and the importation and sale of such garments in the United States and elsewhere." (Compl. ¶ 3.) Likewise, for many years Lollytogs has been engaged in the production and sale of garments in the United States and abroad, either directly or through subsidiaries or affiliates. (Compl. ¶ 4.) Defendant Richard Sutton is President and Chief Executive Officer of Lollytogs, and Defendant Alfred Sutton is an officer and principal of Lollytogs. (Compl. ¶¶ 5-6.)

In approximately 2003, Plaintiff formed a company to engage in the sourcing of garments to be sold to companies who wished or required their employees to be clothed in company uniforms. (Compl. ¶ 7.) In approximately the spring of 2004, Plaintiff was in communication with Lollytogs regarding Lollytogs being a source of funding for the production of uniforms to be sold by Plaintiff's company. (Compl. ¶ 9.) Lollytogs' representatives, including Defendants Richard and Alfred Sutton, advised Plaintiff that Lollytogs had extensive experience in the sourcing and production of garments, and that Lollytogs "was willing and able to provide the financing necessary to pay or provide security for the payment of factories to be engaged by plaintiff's company to produce

2

uniforms to be sold to plaintiff's customers." (Compl. ¶ 9.) In the summer of 2004, Defendants Richard and Alfred Sutton, along with other officers of Lollytogs, proposed to Plaintiff that Lollytogs acquire Plaintiff's company, and that Plaintiff be engaged for a term of five years as President and Chief Executive Officer of that company, which would become a new division of Lollytogs dedicated exclusively to the sourcing and sale of uniforms. (Compl. ¶ 10.) The Defendants proposed that Plaintiff receive "a stated minimum compensation and bonuses, additional compensation and appropriate funding, the agreement to negotiate in good faith a five year renewal after the first five year term, as well as bonuses and additional compensation, and appropriate funding for sourcing of product and cooperation in the development of what was to be the new division of [Lollytogs]" that would source, sell and distribute uniforms. (Compl. ¶ 10.)

On or about September 28, 2004, Plaintiff and Lollytogs entered into the Employment Agreement, which finalized the acquisition of Plaintiff's company by Lollytogs. (Compl. ¶ 11.) The Complaint alleges that "[v]irtually from the beginning of plaintiff's engagement under the Employment Agreement, Defendant's Richard Sutton and Alfred Sutton undermined Plaintiff in the performance of his duties [by the following:]

> a) Shortly after the commencement of plaintiff's engagement, plaintiff generated an order for the production of garments to be sold by plaintiff's division through the sales force he had theretofore developed. The cost for production of these garments was in the neighborhood of $2 million. Contrary to plaintiff's specifications for these garments, they were chemically treated with formaldehyde and contained other cloth and

3

manufacturing defects such that they were altogether substandard and unsaleable and even dangerous to the market. The defendants nevertheless insisted that they would provide no financing or authorize the production of other uniforms unless and until the products described within this subparagraph were sold. Because the manufacturing and other defects were so pervasive, the defendant Richard Sutton ultimately arranged for a sale of these garments for a total price of about $200,000.00, and plaintiff's division was internally charged for the loss.

b) Pending a sale of the garments described in subparagraph (a) above, the defendants discouraged the plaintiff's efforts to develop orders for uniforms and the defendants discouraged plaintiff's efforts to pursue engagements with factories willing and able to produce uniforms for sale by plaintiff's division at favorable landed prices.

c) Instead, the defendants insisted that garments to be sold by plaintiff's division would be made from cloth manufactured by Overseas [sic] mills owned or controlled, in whole or in part, by the defendants Richard Sutton and/or Alfred Sutton; that the cloth so produced be manufactured into garments by Overseas [sic] factories owned or controlled by defendants Richard Sutton and/or Alfred Sutton and their affiliates. The garments so produced and manufactured for sale by plaintiff's division were at prices significantly greater than other merchandise available from independently owned and operated mills and factories.

    d) The defendants Richard Sutton and Alfred Sutton directed the plaintiff to have his division refrain from competing in the sale of uniforms in competition with other leading manufacturers of uniforms and to limit sales efforts to smaller users of such garments.

    e) The separate as well as the cumulative effect of the foregoing was to demoralize plaintiff's sales force, who were required to insist upon prices which were excessive, and to offer merchandise often unsuitable and, for the most part, late for delivery dates promised to customers.

    f) The defendants, their agents, servants, and employees engaged in similar conduct whose design or effect was to undermine the efforts of plaintiff to develop his division created by the Employment Agreement."

(Compl. ¶ 12.)

According to the Complaint, "[o]n or about 18th day of June, 2007, plaintiff's employment engagement was terminated on pretextual grounds." (Compl. ¶ 13.)

**DISCUSSION**

*A. Standard of Review*

Although Defendants' motion includes affidavits countering the Complaint's allegations, when reviewing a 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted, this Court must accept all facts alleged in the Complaint to be true, and all inferences must be drawn in Plaintiff's favor. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 at n.8 (2007) ("when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of

the factfinder.") This court cannot dismiss the Complaint unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-250 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

*B. Count Three*

The Complaint alleges that Richard Sutton and Alfred Sutton, who were President and Chief Executive Officer, and an officer of Lollytogs, respectively, ordered him to place orders for his division from suppliers who were more expensive, produced defective goods, and were owned and controlled in whole or in part by the Suttons. (Compl. ¶ 12.)

Count Three charges inducement of breach of contract by the Sutton Defendants individually, and it reads as follows:

> To the extent the defendant Richard Sutton and Alfred Sutton insisted that garments to be produced for sale by plaintiff's division were to be produced by mills and factories owned in whole or in part by defendants Richard Sutton and/or Alfred Sutton, and their associates, the aforesaid defendants undermined plaintiff's ability to discharge his duties as called for by the Employment Agreement of September 28, 2004.

(Compl. ¶ 18.)

> By reason of the aforesaid acts of the defendants Richard Sutton and Alfred Sutton, they induced the defendant [Lollytogs] to pretextually terminate the Employment Agreement.

(Compl. ¶ 19.)

It is hornbook law that the officers of a corporation cannot be held liable for inducing a corporation to breach an employee's contract. "A director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the

6

corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." Murtha v. Yonkers Child Care Ass'n, 45 N.Y.2d 913, 915 (1978) (internal citations omitted). See also Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289 (S.D.N.Y. 2007). Plaintiff cites cases that are inapplicable to support any argument to the contrary. In arguing that Richard Sutton and Alfred Sutton should be held personally liable, Plaintiff relies on Capitol Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002), an action brought under the copyright laws of the United States, and it is irrelevant to this action. Plaintiff also relies on Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295 (N.D.N.Y. 2003), an action brought for violation of the Civil Rights Law of New York, and thus its holding also is irrelevant to the instant case.[1] Since Count Three of the Complaint only alleges actions taken by the Sutton Defendants in their official capacities, Count Three is dismissed.

*B. Count Two*

The Complaint in Count One alleges that "the termination of [P]laintiff's employment was in violation of the terms of the Employment Agreement between the parties and was generated by a lack of good faith on the part of the [D]efendants." (Compl. ¶ 14.) Count Two alleges damages of not less than $1.5 million, because "the acts and conduct of [Lollytogs] by its agents, servants and employees constituted a violation by the defendant [Lollytogs] of the covenant of good faith implicit in the aforesaid Employment Agreement by which the defendant [Lollytogs] implicitly agreed

---

[1] In the only part of the opinion relevant to this action, the court in Frazier dismissed claims against two defendants in their individual capacity because "throughout their amended complaint, Plaintiffs assert[ed] that these Defendants were acting on behalf of the Oneida Nation and the Casino." Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295 (N.D.N.Y. 2003). Thus, to the extent Frazier is relevant, it supports Defendants' motion.

7

to refrain from committing any act which would impede or impair the discharge by [P]laintiff of his duties under the terms of the Employment Agreement." (Compl. ¶¶ 16, 17.)

Plaintiff argues that the claims are distinct in Counts One and Two, and that a plaintiff may bring a suit for breach of Employment Agreement and for breach of the implied covenant of good faith in a single action. He relies on Chase Manhattan Bank, N.A. v. Keystone Distribs., 873 F. Supp. 808, 815 (S.D.N.Y. 1994) and Gross v. Empire Healthchoice Assur., Inc., 2007 NY Slip Op 51390U, 4 (N.Y. Misc. 2007). These cases merely hold that one can recover for breach of the implied covenant of good faith, even when one has not breached the explicit terms of a contract. They do not support the argument that one can plead breach of the implied covenant of good faith in a contract, and breach of that same contract as a separate cause of action.

In Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992), the Second Circuit, in disposing of a plaintiff's argument that a defendant breached a duty of good faith and fair dealing implied in the express contractual relationship, stated that "[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." See also Raul v. AMEX, 1996 U.S. Dist. LEXIS 5914 at *8, n.2 (S.D.N.Y. 1996) ("Since Plaintiff has also alleged breach of contract, his separate claim for breach of the implied duty of good faith and fair dealing is dismissed as redundant."); McMahan & Co. v. Bass, 250 A.D.2d 460, 462 (N.Y. App. Div., 1st Dep't 1998), ("the allegation of a breach of the duty of good faith is duplicative of the cause of action for breach of contract since, where appropriate, the courts will imply the obligation of good

8

faith and fair dealing between parties to a contract…[and] the alleged tortious conduct is innate to the performance of the contract.")

*Count One*

Count One seeks damages of not less than $1.5 million for termination of the Employment Agreement on June 18, 2007. (Compl. ¶ 15.) Defendants urge that damages are limited by the "liquidated damages clause" of the Employment Agreement. (Defs.' Mem. Supp. Mot. Dismiss, 12.), and argue that Plaintiff is entitled to one year's salary of $185,000 payable weekly, since that is higher than two years of bonus payments. (Defs.' Reply Mem. at 2.) This is not a proper motion at the Complaint stage of the proceedings. Accordingly, it is denied without prejudice to renew after discovery has been completed.

**CONCLUSION**

For the reasons stated above, Defendants' motion (Doc. #6) is granted in part, and Count Two and Count Three of the Complaint (Doc. #1) are dismissed, and Count One of the Complaint (Doc. #1) is not dismissed.

IT IS SO ORDERED.

Dated: New York, New York
       January **31**, 2008

_____
Robert P. Patterson, Jr.
U.S.D.J

9

*Copy of This Opinion and Order Sent to:*

**Counsel for Plaintiff**

Noel W. Hauser
Noel W. Hauser & Associates
270 Madison Avenue
13th Floor
New York, NY 10017
(212) 688-6400
Fax: (212) 688-6457

**Counsel for Defendants**

Felice Barbara Ekelman
Jackson Lewis, LLP
59 Maiden Lane
New York, NY 10038
212-545-4005
Fax: 212-972-3213

John A Snyder, II
Jackson Lewis, LLP
59 Maiden Lane
New York, NY 10038
212-545-4000 X4054
Fax: 212-972-3213